COMMONWEALTH *vs.* GEORGE L. ROLLINS.

SAME *vs.* SAME.

Suffolk.    March 31, May 15, 1922. — July 6, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Homicide. Evidence,* Of identification, Competency, Hearsay. *Witness,* Cross-examination. *Practice, Criminal,* New trial in capital case.

At the trial of an indictment for murder, the identity of the person who committed the murder was in issue. A witness having testified that on being shown an album he picked "out the picture of a man who looked like" one of the men whom he had seen at a store, the place of the alleged homicide, he was asked in cross-examination, "Do you know why the police have not brought that man to you?" This question having been answered in the negative, he then was asked, "Have you been given any reason?" This question was excluded subject to the defendant's exception. The judge thereupon suggested that he would allow a question, "Whether any police officer gave him any reason." The defendant's counsel, reframing the question, then asked, "Was any reason given why that man was not produced by any police officer?" to which the witness answered, "No, sir." *Held,* that the ruling was within the discretionary power of the judge and that the defendant was not prejudiced.

At the trial above described, testimony of a police sergeant as to what he observed at the jail where the defendant was confined when the defendant was lined up with other men and a witness, having been instructed to pick out any person he had seen in the vicinity of the crime the night the murder was committed, went up and put his hand on the defendant, and that another witness refused to pick out any one from the line, was not hearsay and was admissible.

At the trial above described, after the defendant had testified that, being informed that he was suspected of the crime and was sought by the police, he had gone to the office of his counsel and that the reason he went there was to get the counsel to act relating to a restoration of a chauffeur's license and not in connection with the murder or his being suspected, the government's counsel properly may be permitted to cross-examine him in detail with relation to the character of the license and the date of its suspension.

The Superior Court had no jurisdiction on May 5, 1920, to entertain a motion, by the defendant in an indictment for murder, for a new trial on the ground of newly discovered evidence, where it appeared that a verdict of guilty of murder in the first degree had been returned on June 8, 1918, although no sentence yet had been imposed.

INDICTMENT, found and returned on March 10, 1917, charging the defendant, "otherwise called Dutch Rollins," with the murder of Ordway R. Hall on February 21, 1917.

The defendant was tried in the Superior Court before *Keating,* J. Material evidence and exceptions saved at the trial are described in the opinion. The " evidence as to what happened at the jail to which the defendant had been committed, when attempts were made in his presence to identify him as the person charged in the indictment," referred to in the opinion, was testimony of a police sergeant, who testified that he "went with Gorrie, Riley and Burnett to the Charles Street Jail where an identification was made by Gorrie: 'He [the defendant] was lined up with other men . . . He [Gorrie] went over and put his hand on him . . . I went in the jail and went inside, and Sheriff Quinn, there were three officers there, and Sheriff Quinn told me to sit down at the table. . . . And I sat down while the identification was being made. One of the jail officers talked to the witnesses. I didn't hear the conversation. But before they went in there I told them they were to pick out any person they saw there, or persons, whom they saw in front of the A. & P. Store, or in that vicinity that night of the murder being committed; they were to do that." Q. "Did Rollins, the defendant, say anything when Gorrie put his hand on his shoulder?" A. "No, I didn't hear him. I was quite a distance from him. If he said it in a low tone of voice I wouldn't have heard it." He also testified to a refusal of another witness to point out any one from the line.

The defendant was found guilty on June 8, 1918. A motion for a new trial was filed on June 12, 1918, and was denied on September 3, 1918. Exceptions to such denial afterwards were waived.

On May 5, 1920, a motion for a new trial on the ground of newly discovered evidence was filed. That motion was denied on June 29, 1920.

The defendant alleged exceptions.

*T. L. Walsh,* (*J. M. Harlow* with him,) for the defendant.

*D. J. Gallagher,* Special Assistant District Attorney, (*D. M. Lyons,* Assistant District Attorney, with him,) for the Commonwealth.

BRALEY, J. The defendant having been indicted, tried and convicted of murder in the first degree on June 8, 1918, the case is before this court on exceptions to rulings at the trial allowed January 9, 1922, and exceptions, allowed on December 21, 1921, to the refusal to give certain rulings on a motion for a new trial

because of newly discovered evidence, which was denied on June 29, 1920.

The exceptions relating to the merits may be considered in the order shown by the record. "There was testimony that the defendant . . . fired the shot which killed Hall," the decedent. "The principal, if not the sole, question for the jury was whether or not the defendant was the man who fired the shot . . . there being no question . . . that the person who killed him was, at the time, committing robbery being armed with a revolver." R. L. c. 207, § 17, as amended by St. 1911, c. 84, G. L. c. 265, § 17. It was competent for the Commonwealth to introduce evidence to identify the defendant as the assailant, and, a witness having testified that on being shown an album he picked out "the picture of a man who looked like" one of the men whom he had seen at the store, the place of the alleged homicide, he was asked in cross-examination, "Do you know why the police have not brought that man to you?" This question having been answered in the negative he was then asked, "Have you been given any reason?" The question was excluded subject to the defendant's exception. The judge thereupon suggested that he would allow a question, "whether any police officer gave him any reason." The defendant's counsel reframing the question then asked, "Was any reason given why that man was not produced by any police officer?" to which the witness answered, "No, sir." It is obvious that the defendant was not prejudiced by the ruling which was within the discretionary powers of the judge. *Commonwealth* v. *Min Sing,* 202 Mass. 121.

The evidence as to what happened at the jail to which the defendant had been committed when attempts were made in his presence to identify him as the person charged in the indictment, was admissible. It was not hearsay. The weight and sufficiency of that evidence as well as similar evidence tending to establish identification was for the jury. *Commonwealth* v. *Snow,* 14 Gray, 385. *Commonwealth* v. *Annis,* 15 Gray, 197.

The defendant, after testifying in direct examination as to the time when he first knew that he was suspected and was being sought for by the police, said on cross-examination, that after receiving information that the officers had been to his house he went to the office of his counsel. The district attorney then in-

quired as to the object of his visit and the necessity of his obtaining legal advice. After disclaiming that what he did had any connection with the crime charged, he was asked, "Well, what did you go there for?" "I went in to have him go to the Massachusetts Highway Commission so that I could get my license." It appeared that he had a chauffeur's license which "had been taken away," and the further questions as to the date when this was done, and "What was the license he had to see counsel about?" and how long before the homicide it had been revoked were admissible. The defendant whether guilty or innocent had the undoubted right to retain counsel, and to consult him about the circumstances which had come to his knowledge, that he was suspected of having committed the murder. But, having said that his only purpose was to obtain if possible a renewal of his license, the character of the license and the date of its suspension were subjects of inquiry within the discretion of the judge. *Commonwealth* v. *Min Sing, supra. Commonwealth* v. *Mullen,* 97 Mass. 545.

We discover no error of law at the trial, and pass to the errors alleged for reversal of the order denying the motion. R. L. c. 173, § 106. The indictment was tried at a sitting beginning June 3, 1918, but the motion was not filed until February 16, 1921. By R. L. c. 219, § 33, G. L. c. 278, § 29, "The Superior Court may, at the sitting in which an indictment is tried, or within one year thereafter, upon motion in writing of the defendant, grant a new trial for any cause for which by law a new trial may be granted, or if it appears to the court that justice has not been done, and upon such terms and conditions as the court shall order." If the statute controls, the trial court was without jurisdiction to entertain the motion, and no question of law is before us. *Fourth National Bank of Boston* v. *Mead,* 214 Mass. 549.

The common law of England conferred no power on the court to grant new trials in capital cases. *Regina* v. *Frost,* 2 Moody, 140. *United States* v. *Gilbert,* 2 Sumn. 19. *United States* v. *Keen,* 1 McLean, 429, 432. *The King* v. *Mawbey,* 6 T. R. 619. *Tinkler's Case,* 13 East, 416, note (b). *Regina* v. *Bertrand,* L. R. 1 P. C. 520. *The Queen* v. *Murphy,* L. R. 2 P. C. 535. The defendant upon conviction must resort to the pardoning power for relief, which if not granted execution followed. If the court had ruled errone-

ously a pardon ordinarily was granted upon recommendation of the judges. The remedy where there were errors of fact was the writ of *coram nobis.* The entire subject is exhaustively and learnedly examined and discussed in *Quimbo Appo* v. *People,* 20 N. Y. 531, 549, and in *Sanders* v. *State,* 85 Ind. 318, 324–329. See *Opinion of the Justices,* 207 Mass. 606, 608, 609. It was decided in *Commonwealth* v. *Green,* 17 Mass. 514, where the defendant, having been convicted of murder, moved, after verdict but before sentence, for a new trial on the ground of newly discovered evidence, that this court has "power to grant a new trial on the motion of one convicted of [a] capital offence" if sufficient cause is shown therefor. It was said: "It has been argued . . . that by law a new trial cannot be granted of a capital felony; and it appears by the English Text Book, and by several decisions cited in support of the position, that in cases of felony, a new trial is not usually allowed by the courts of that country. But whatever reasons may exist in that country for this practice, we are unable to discern any sufficient grounds for adopting it here." See also as supporting the same view *State* v. *McCord,* 8 Kans. 232. And in *Commonwealth* v. *Lockwood,* 109 Mass. 323, 338, Mr. Justice Gray said, "In *Commonwealth* v. *Green,* 17 Mass. page 515, in 1822, in which the power of the court to grant a new trial in a capital case on motion of the defendant after conviction by the jury was deliberately settled for the first time in this Commonwealth, upon full argument and advisement, Chief Justice Parker, in delivering judgment, clearly affirmed the authority of the court, upon being satisfied of an error in the rulings at the trial, to certify the fact to the executive and recommend a pardon, instead of granting a new trial; and declared that the latter course was the most proper, not from any doubt of the power of the executive to grant a pardon at that stage of the case, but because it was more consistent with public justice that the defendant should be tried again according to law than that he should be discharged for some irregularity perhaps not affecting the merits of the case, and more consistent with the rights of the defendant to have the judges correct an error committed by themselves or by others concerned in the trial, 'instead of being obliged to rely upon the disposition of the court to recommend a pardon, or of the executive power to grant it;' 17 Mass. 535, 536." The right of trial by jury includes

the power of the presiding judge to set aside the verdict and continues until a verdict is returned to which no valid objection is made. *Opinion of the Justices,* 207 Mass. 606, 609. *Louisville & Nashville Railroad* v. *Woodson,* 134 U. S. 614.

But the conditions under which this right can be exercised may be prescribed within reasonable limits by the Legislature, and new trials in civil cases have been made subject to reasonable statutory regulations as to procedure; and limitation of the issue to be presented at the new trial where the question relates only to damages. St. 1820, c. 79, § 7. Rev. Sts. c. 82, § 19. St. 1855, c. 185. St. 1859, c. 196, § 32. Gen. Sts. c. 115, § 6. Pub. Sts. c. 153, § 6. St. 1897, c. 472. R. L. c. 173, § 112. G. L. c. 231, § 127. St. 1911, c. 501. G. L. c. 231, § 128. *Ellis* v. *Ginsburg,* 163 Mass. 143. *Forbes* v. *New York Life Ins. Co.* 178 Mass. 139. *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, 229. *McKinley* v. *Warren,* 218 Mass. 310, 311. *Edwards* v. *Willey,* 218 Mass. 363, 365. See *Opinion of the Justices,* 207 Mass. 606, 608, 609. The first enactment relating to new trials in criminal cases is St. 1830, c. 113, § 3, which conferred upon the Court of Common Pleas "concurrent original jurisdiction with this court, except in Suffolk, of all crimes not capital, provided, in § 3, that that court should 'have power, at the term at which the trial of any indictment shall be had or any judgment shall be rendered, or at any subsequent term thereof within six months from the time of such trial or rendition of such judgment, on petition or motion of the defendant in writing, to grant a new trial in such case, for any cause for which by the laws of this Commonwealth a new trial may be granted, or when upon due examination it shall appear to said court that justice has not been done, upon such terms and conditions as to said court shall seem proper.' A precisely similar provision, but extending the time from six months to one year, was inserted in § 4 of the St. of 1832, c. 130, which transferred to the Court of Common Pleas entire original criminal jurisdiction of this court, in all the counties but Suffolk, except in capital cases. The criminal jurisdiction of crimes not capital in Suffolk was then, and continued under the Revised Statutes to be, vested concurrently in this court and in the Municipal Court of the City of Boston. St. 1812, c. 133. Rev. Sts. c. 81, § 17; c. 86, § 4. The Sts. of 1830 and 1832 expressly authorized the Court of Common

Pleas to grant a new trial at any time within a year after judgment; . . ." *Commonwealth* v. *McElhaney,* 111 Mass. 439, 441, 442. The Rev. Sts. also by c. 82, § 30, gave authority to the Court of Common Pleas to grant a new trial in any criminal prosecution within one year after judgment. It is to be observed that the word "judgment" is omitted in Rev. Sts. c. 138, § 10, and in all subsequent revisions. But even if the power of the Court of Common Pleas was not limited to indictments, the subsequent revisions and codifications found in Gen. Sts. c. 173, § 7, Pub. Sts. c. 214, § 28, R. L. c. 219, § 33, G. L. c. 278, § 29, made no material change in Rev. Sts. c. 138, § 10, and contain no such provision as to the Superior Court which succeeded the Court of Common Pleas. And St. 1891, § 379, having transferred jurisdiction over capital cases to the Superior Court, the exercise of this power is confined to that court, which is a court of general jurisdiction. R. L. c. 157, § 7. G. L. c. 212, §§ 1–20. R. L. c. 219, § 33. G. L. c. 278, § 29. See *Commonwealth* v. *Phelps,* 210 Mass. 78, 82, for a short but comprehensive statement of the jurisdiction over capital cases in this Commonwealth.

The motion for a new trial in *Commonwealth* v. *Green, supra,* was filed and decided as we have said before sentence had been imposed and the conditions in the case at bar are similar. In *Commonwealth* v. *McElhaney,* 111 Mass. 439, the decision in *Commonwealth* v. *Green* is said to rest on the inherent power in this court "by virtue of its general jurisdiction, and independently of any special authority conferred upon it by statute . . . to grant new trials even in capital cases." But *Commonwealth* v. *Green* went no further than to decide that such a motion could be entertained before sentence. The Legislature enlarged the remedy, leaving the substantive right unimpaired. It is true that while the statute relates only to indictments and is silent as to complaints, a new trial in a capital case may be granted after sentence of death pronounced by the court and a warrant for execution has issued. *Commonwealth* v. *McElhaney,* 111 Mass. 439. The time within which motions for new trials in capital cases must be filed has been regulated by statute for nearly a century and never has been challenged, and while the entire field of criminal procedure is not included, prosecutions by indictment, which can be presented only by a grand jury, are covered. We are of opinion that the

provisions of the statute governing new trials in such cases must be followed and that the motion was not seasonably filed. *Commonwealth* v. *Cooley,* 10 Pick. 37. *Commonwealth* v. *Marshall,* 11 Pick. 350. *Commonwealth* v. *Peck,* 1 Met. 428, 432. *Commonwealth* v. *Soderquest,* 183 Mass. 199. *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, 230, 231.

By St. 1922, c. 508, enacted while this case was pending in this court, § 29 of c. 278 of the G. L. was amended so that "The Superior Court may, at the sitting in which an indictment is tried, or within one year thereafter, or, in capital cases, within said year or at any time before sentence, upon motion in writing of the defendant, grant a new trial for any cause for which by law a new trial may be granted or if it appears to the court that justice has not been done, and upon such terms or conditions as the court shall order." Whatever may be the effect of this statute, it has no application to the present motion.

The exceptions in the first case are overruled, and in the second case they are dismissed for want of jurisdiction.

*So ordered.*